UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKECHNIE VEHICLE
COMPONENTS USA, INC.,

Case No. 09-cv-11594

Plaintiff,

HONORABLE STEPHEN J. MURPHY, III

v.

LACKS INDUSTRIES, INC. and LACKS
WHEEL TRIM SYSTEMS, LLC,

Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
LACKS' MOTION FOR LEAVE TO ADD COUNTERCLAIMS**
(docket no. 49) **AND DENYING MICHAEL GZYBOWSKI'S
<u>MOTION FOR A PROTECTIVE ORDER</u>** <u>(docket no. 33)</u>

Defendants Lacks Industries, Inc. and Lacks Wheel Trim Systems, LLC ("Lacks") filed a motion on August 10, 2010, seeking to add counterclaims of inequitable conduct before the United States Patent and Trademark Office ("USPTO") against plaintiff McKechnie Vehicle Components USA, Inc. ("McKechnie"). The counterclaims arise out of alleged improprieties by McKechnie employees and their attorney in the prosecution of the two patents at issue in the case.[1] If successful, these counterclaims would render the patents in the present lawsuit unenforceable. McKechnie has challenged both the factual sufficiency and the legal legitimacy of the amendments.

---

[1] Patent No. 6,932,435 ("the '435 patent") was filed on November 7, 2003 and is titled "Adhesive Patterns for Vehicle Wheel Assemblies." Patent No. 7,025,426 ("the '426 patent") was filed on March 1, 2004 and is titled "Sound Dampening Adhesive Patterns for Vehicle Assemblies." Both patents involve methods for applying adhesive to a wheel to attach a decorative wheel cover.

The Federal Circuit has set high standards for the pleading of inequitable conduct, and emphasizes that district courts are not to permit such claims without careful inspection of the complaint. Yet Lacks has shown that one of its theories of inequitable conduct, related to the triggering of the on-sale bar under 35 U.S.C. § 102(b), can overcome this threshold. Accordingly, the Court will grant in part and deny in part Lacks' motion to amend the complaint to include the two proposed counts of inequitable conduct

In addition, the Court has before it a motion to compel the deposition of Michael Gzybowski, the prosecuting attorney for the patents in suit. His motion was originally referred to a magistrate judge, who held a hearing on the matter. *See* Mot. Hr'g, Docket No. 50. The Court has recalled this motion since it is related to the issue of whether or not Lacks should be allowed to bring its inequitable conduct claims. Gzybowski concedes that if inequitable conduct charges are added to Lacks' counterclaims, his deposition would become relevant. Third Party Mot. Protective Order, Docket No. 33, 5–8; Tr. Mot. Hr'g, Docket No. 50, 25–26. Because the Court concludes that the complaint can be amended to add an inequitable conduct charge, Gzybowski's deposition is now relevant to the case, and the Court will deny his motion for a protective order.

**LEGAL STANDARD: PLEADING INEQUITABLE CONDUCT  
UNDER FED. R. CIV. P. 9(b) AND *EXERGEN***

Lacks missed its opportunity to amend its pleading as "a matter of course" under Fed. R. Civ. P. 15(a)(1). It has now asked for leave to amend under Fed. R. Civ. P. 15(a)(2), which the Court has the authority to grant "as justice so requires." If "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and there is no evidence of delay, prejudice, or futility behind the request, the Court should grant leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Moore v. City of Paducah*, 790 F.2d 557, 561 (6th Cir. 1986) ("The thrust of Rule 15 is to reinforce the principle that cases

should be tried on their merits rather than the technicalities of pleadings."). McKechnie on the other hand has asked the Court to deny leave to amend as "futile" because the new counterclaim Lacks proposes would not survive a motion to dismiss for failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). The Court held a lengthy hearing in this matter on October 14, 2010. Docket, Minute Entry for 10/14/2010.

In determining whether the amended counterclaims are futile, the Court presumes the truth of all well-pled factual allegations made by Lacks. *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2006). *But see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the element of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In addition, all reasonable factual inferences are to be drawn in favor of Lacks. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007).

The pleading standards for inequitable conduct are specifically tailored to the substantive offense. Inequitable conduct requires proof that

> (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009); *see also* 37 C.F.R. § 1.56 ("[N]o patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct."). Since inequitable conduct is a form of fraud, these elements must be plead with "particularity." Fed. R. Civ. P. 9(b).

In *Exergen*, the Federal Circuit — which provides the controlling authority for this Court on Rule 9(b), as it relates to claims arising under patent law — set a high standard

3

of "particularity" for pleading inequitable conduct claims. *See Exergen*, 575 F.3d at 1326 ("[W]e apply our own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b)."). *Exergen* requires parties to plead "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" in order for their claim to survive under Rule 9(b). *Id.* at 1327. Moreover, "although 'knowledge' and 'intent' may be averred generally," a proposed inequitable conduct count under Rule 9(b) must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind" for each element of the offense. *Id.* at 1327.

These standards enforce the Federal Circuit's policy of deterring parties involved in patent litigation from bringing inequitable conduct charges without just cause. *See Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("A patent litigant should be made to feel . . . that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice."). Nevertheless, the Court recognizes that some of the more articulate protests from Federal Circuit judges on the overbreadth of inequitable conduct in recent years have come from dissenting judges in their own cases. *See Taltech Ltd. v. Esquel Enterp. Ltd.*, 604 F.3d 1324, 1335 (Fed. Cir. 2010) (Gajarsa, J., dissenting) (criticizing the "ongoing pandemic of baseless inequitable conduct charges that pervade our patent system" that the); *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1373 (Fed. Cir. 2003) (Newman, J., dissenting) ("My colleagues have distorted the patent process, and the science it supports, into a game of high stakes hindsight that few patents can survive."). These protests suggest that while the "game of high stakes hindsight" inequitable conduct invites is perceived by many judges as normatively undesirable, the jurisprudence of the Federal

4

Circuit is trending in the opposite direction. It is the role of this Court, therefore, to apply that jurisprudence, even if it might disagree with the underlying policy implications.

**ANALYSIS**

The Rule 15(a)(2) issues raised by Lacks' proposed counterclaims can be divided into two parts. First, the Court must address whether the counterclaims are futile. This analysis is the same the Court would undertake if it were ruling on a motion to dismiss the inequitable conduct claims under Rules 9(b) and 12(b)(6), as set forth in *Exergen*. Second, the Court must determine whether allowing amendment at this point in the litigation would create undue delay or prejudice. This second element of the analysis is significantly less involved than the first. The Court concludes, for the reasons set forth below, that Lacks should be granted leave to add the counterclaims for inequitable conduct on their theory of pre-critical date sales of a device covering the patents in suit, but not on the grounds that they misrepresented a patent held by Lacks in the background descriptions of the patents in suit. Furthermore, the Court finds that permitting these limited counterclaims to go forward will not create undue prejudice or delay.

I. <u>Futility: Sufficiency of the Pleadings Under Rule 9(b) and *Exergen*</u>

The gist of Lacks' inequitable conduct claims is that the inventors of the patents in suit conspired with their patent attorney to misrepresent a crucial piece of prior art held by Lacks in the backgrounds of the patents in the suit,[2] and to hide from the patent examiner commercial sales of a wheel — the 2003 JR 5-spoke wheel ("the JR wheel assembly") — that allegedly reduced the designs protected by the '435 and '426 to practice prior to the

---

[2] The prior art is Patent No. 5,597,213 ("the '213 patent"), which was filed on June 6, 1995 and is titled "Wheel and Overlay Assembly."

"critical date"[3] on the slightly older '435 patent. McKechnie's opposition to the motion for leave focuses on the sufficiency of the factual basis for Lacks' proposed counterclaims, and on whether some of their alleged actions, even if proven true, constitute inequitable conduct in the first place.

The *Exergen* court applied the "who, what, when, where, and how" standard in a fairly literal manner. *See Exergen*, 575 F.3d at 1329–31 (analyzing, for example, how plaintiffs failed to demonstrate the "who," "what," and "where" of their inequitable conduct claim). Likewise, the parties have based their arguments here on the standard by explicitly showing how each question is answered (or not answered) by the briefs and the proposed amended complaint. *See, e.g.*, Lacks Mot. at 4. To apply *Exergen* properly, the Court will organize its analysis of Lacks' proposed counterclaims in a similar fashion.

### A. Who Engaged in Inequitable Conduct?

An inequitable conduct count must name the persons who knew of the material information and deliberately withheld or misrepresented it. *Exergen*, 575 F.3d at 1329. Lacks has identified patent attorney Michael Gzybowski and McKechnie employees Douglas Cutcher and Scott Hogan as the individuals responsible for inequitable conduct with respect to the patents in suit in this case. *See, e.g.*, Proposed Am. Counterclaims ¶¶ 37, 62; Lacks Mot. at 4. McKechnie does not dispute that Lacks has pled this element properly. The Court concludes that Lacks has satisfied this element of the *Exergen* test.

---

[3] The "critical date" of a patent is not a statutorily-defined term, but patent lawyers use it to refer to the date one year prior to the filing of a patent. Alan L. Durham, Patent Law Essentials 117 (2d ed. 2004). It is "critical" because if an invention "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country" before the "critical date," a patent cannot be granted on the invention. 35 U.S.C. § 102(b).

B. What Claims Are Relevant to the Prior Art References?

In its proposed amended counterclaims, Lacks asserts that "[a]ll of the claims of the '435 and '426 Patents are rendered invalid" by both the '213 Patent and the JR wheel assembly. Lacks' Memo. Supp. Mot. 4. While this might appear, at first, to be the sort of conclusory allegation of inequitable conduct that *Exergen* prohibits, Lacks' allegations are actually far more detailed. Each count is can be broken down into two parts, one dealing with the '213 patent's preclusionary effects, and the other addressing the JR wheel assembly. Each part sets out, in detail, how an independent claim of each of the patents in suit is covered by these asserted pieces of prior art. Proposed Am. Counterclaims ¶¶ 32, 45, 59, 69. This is all that Lacks needs to show to have both of the patents in suit invalidated in their entirety. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988) (en banc) ("When a court has finally determined that inequitable conduct occurred in relation to one or more claims during prosecution of the patent application, the entire patent is rendered unenforceable."). Lacks has met its burden on the "what" prong of the *Exergen* test.

C. When Did the Conduct Take Place?

Lacks claims that Hogan, Cutcher, and Gzybowski were under an obligation to remove misconceptions about the '435 and '426 patents during the pendency of their consideration by the PTO, from November 7, 2003, to April 11, 2006. Lacks Mot. at 4. That information should have been given in information disclosure statements the inventors and Gyzbowski filed with the USPTO on November 7, 2003, and July 8, 2004. McKechnie does not dispute this element, and the Court concludes that it has been satisfied by Lacks' proposed amended counterclaims.

D. Where in the '213 Patent and the JR Wheel Assembly Is the Misrepresented or Undisclosed Information Found?

A party pleading inequitable conduct must show "where in the [withheld or misrepresented] references the material information is found." *Exergen*, 575 F.3d at 1329. With regard to the '435 patent's relationship to the '213 patent, Lacks argues that the '213 patent disclosed a method for permitting flow of fluids in spaces between a wheel cover and a wheel not filled with adhesive. Proposed Am. Counterclaims ¶ 32.[4] The background section for the '435 patent claimed that the '213 patent did not cover this innovation. '435 Patent col. 2 ll 19–32. Similarly, Lacks claims that the background description of the '213 patent in the '426 patent left out several key features of the '213 patent, including separate adhesive beads, sound deadening features, non-sealed adhesive patterns, and the use of a hot melt adhesive in combination with a high strength adhesive. Proposed Am. Counterclaims ¶ 58. Lacks also provides detailed explanations of how the JR wheel assembly embodies each material element of both of the patents in suit. *Id.* at ¶¶ 45, 69. The Court concludes that Lacks has made a sufficient showing of the location of the misrepresented or withheld information in the disputed prior art references.

---

[4] Lacks argues this point by focusing on the third independent claim of the '213 patent, which teaches "[a] method for assembling an overlay to a wheel having a disk portion and a rim portion circumscribing said disk portion" through use of a curable adhesive. U.S. Patent No. 5,597,213 col. 15 ll. 13–15, 23–28 (filed June 6, 1995). The first dependent claim off of that independent claim expands the invention to cover "selectively depositing said curable adhesive along a peripheral edge . . . so as to exclude water and dirt from said gap . . . ." *Id.* at col. 15 ll. 34–38. Lacks argues that because a dependent claim was necessary in the '213 patent to add the fluid *exclusion* functionality, the independent claim must cover a wheel assembly that permits the flow of fluid through it. For reasons to be discussed later in this Order, the Court is not persuaded by Lacks' explanation as to *how* this discrepancy would lead to the grant of an otherwise-unworthy patent, as a matter of law. Nonetheless, for the purpose of analysis under *Exergen*, Lacks did succeed in pleading, with specificity, *where* the misrepresented information could be found in the '213 patent.

8

E. How Would the Examiner Have Used the '213 Patent or the JR Wheel Assembly to Find the Claims of the Patents in Suit to Be Anticipated or Obvious?

The most difficult step in the *Exergen* analysis is showing the "how" of inequitable conduct — the causal link between the activity alleged and the granting of the patents in suit. It forces the Court to address the legal adequacy of an inequitable conduct claim, for if the alleged behavior is not the type that gives rise to inequitable conduct, no claim exists. The Court concludes that one of Lacks' two theories of inequitable conduct cannot survive such scrutiny here. Lacks' contention that McKechnie's descriptions of the '213 Patent given in the background of the patents in suit rises to the level of inequitable conduct is unpersuasive, even if all of Lacks' assertions are taken as true. But the accusations regarding pre-critical date sales of the JR wheel assembly do constitute a legally cognizable claim, and Lacks is entitled to undertake discovery and pursue these charges insofar as they attempt to address the non-disclosure of evidence regarding the triggering of the for-sale bar.

1. Misrepresentations of the '213 Patent

    a. Misrepresentation as Inequitable Conduct, Generally

Courts are far less receptive to inequitable conduct claims when prior art is actually disclosed to the USPTO, and another party merely objects to alleged misrepresentations in those disclosures. *See* 6 Donald S. Chisum, Chisum on Patents § 19.03[2] (2010) ("If the alleged misdeed consists of a misrepresentation about prior art . . . that is in the PTO file and accessible to the examiner, a court is less likely to find inequitable conduct."). But the Federal Circuit has held that misrepresentations of facts contained in disclosed prior art references, if they are sufficiently serious, can rise to the level of inequitable conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) ("Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material

information, or submission of false material information . . . ."); Chisum, *supra*, § 19.03[2] n.5–6 (citing cases where courts have held that misrepresentation is a legally sufficient basis for inequitable conduct, despite the general trend against it). Lacks has brought to the Court's attention numerous examples of this form of inequitable conduct.[5] While the hurdle to establish inequitable conduct on this theory is high, the Court cannot conclude that such a theory is legally futile on its face. Even a patent examiner as experienced as Mr. Stormer here could mistakenly rely on misrepresentations in an application. The law of inequitable conduct should not encourage applicants to capitalize on such errors. *See KangaROOS U.S.A.*, 778 F.2d at 1576 ("[T]he duty of square dealing and full disclosure that rests on the patent practitioner in dealings with the PTO. . . . is not done by one who knowingly takes advantage of an error by the PTO.").

Nevertheless, misrepresentation of a disclosed prior art reference must be distinguished from instances when an attorney takes a legal position on a particular patent that parties in litigation disagree upon, or that a court deems erroneous at a later date. Mere "attorney argument, attempting to distinguish the claims from the prior art," is not inequitable conduct. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007); *see*

---

[5] *See, e.g.*, *Taltech Ltd. v. Esquel Enterp. Ltd.*, 604 F.3d 1324, 1333–34 (Fed. Cir. 2010) (holding that misrepresentations about particular stitching seam's presence in previous items manufactured by applicants constituted inequitable conduct, even if misrepresentations were not ultimate reason why patent was approved, if done with intent of making examiner accept factual error); *Monsanto Corp. v. Bayer Biosience N.V.*, 514 F.3d 1229, 1239 (Fed. Cir. 2008) (concluding that arguments patent applicant made to PTO about abstract written by scientist to PTO which directly contradicted notes made about presentation that served as basis for abstract were material misrepresentations sufficient to support inequitable conduct charges); *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1364–68 (Fed. Cir. 2003) (finding representations by inventors' that they performed experiment which was not actually performed was sufficient basis for inequitable conduct); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1372 (Fed. Cir. 2000) (holding inequitable conduct took place in case when applicant disclosed partial translation of prior art reference in Japanese, knowing that full translation contained teachings that would render applicant's invention obvious).

*also Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) (holding that an attempt to distinguish prior art in a patent application was not sufficient grounds for an inequitable conduct claim, because "[t]he mere fact that [the applicant] attempted to distinguish [another] process from the prior art does not constitute a material omission or misrepresentation"). When an applicant presents an argument about a piece of prior art to distinguish it from the invention he or she seeks to protect, and that argument is not "demonstrably false," it cannot form the basis of an inequitable conduct claim. *Young*, 492 F.3d at 1349. In those cases, the examiner typically has the ability to look at the piece of prior art for himself, and can freely accept or reject the applicant's argument. *Id.* While it may be the case, at a later stage, that the applicant's legal argument is proved *erroneous*, incorrect legal arguments are not a proper basis for inequitable conduct charges.

The boundary between legal argument and factual misrepresentation can be difficult to ascertain in certain cases. A very recent case decided by the Federal Circuit and discussed by both the parties, *Ring Plus Inc. v. Cingular Wireless Corp.*, 614 F. 3d 1354 (Fed. Cir. 2010), goes some way in demystifying the distinction. In the application for the patent in suit in *Ring Plus*, the prosecuting attorney claimed that one of the prior art patents did not disclose "software" to implement a particular system, even though it was plain from a reading of the patent that software was "implicitly disclosed" by the patent. *Ring Plus*, 614 F.3d at 1360. After a bench trial, the U.S. District Court for the Eastern District of Texas concluded that inequitable conduct took place in the prosecution of the patent. *Id.* at 1357. The Federal Circuit reversed, but found that the applicant's behavior would have qualified as a misrepresentation of material fact suitable to support an inequitable conduct charge. It held that because "a person of skill in the art would have understood the references to disclose software-based algorithms," representations to the contrary by the

11

applicant were misrepresentations of material fact. *Id.* at 1360. The court rejected arguments that the applicant's claims were innocuous "attorney argument," maintaining that the misrepresentation "was outside the bounds of permissible attorney argument." *Id.* at 1361.

The Court understands *Ring Plus*, along with the other inequitable conduct cases discussed by McKechnie and Lacks, to stand for the following: if a person of skill in the art would understand a disclosed piece of prior art to teach a certain fact relevant[6] to the prosecution of the patent in suit, and an applicant's statement distorts or otherwise misrepresents that fact, that statements can serve as the basis for inequitable conduct charges. If the statement is not "demonstrably false" in this regard, the statement must be considered a legal argument made to distinguish pieces of prior art and cannot serve as the basis for sanctions.

### b. Application for the '435 Patent

Lacks' arguments about the description of the '213 patent in the background of the '435 patent give the Court pause because they essentially ask the Court to find inequitable conduct on the basis of a legal argument made long after McKechnie sought to obtain the patents in suit. Lacks emphasizes the third independent claim of the '213 patent, which teaches "[a] method for assembling an overlay to a wheel having a disk portion and a rim portion circumscribing said disk portion" through use of a curable adhesive. U.S. Patent No. 5,597,213 col. 15 ll. 13–15, 23–28 (filed June 6, 1995). The first dependent claim off

---

[6] Relevance, or materiality, is determined by an objective standard. If "a reasonable examiner would consider [information] important in deciding whether to allow the application to issue as a patent," it is sufficiently relevant to support an inequitable conduct charge. *Symantec Corp. v. Computer Assocs. Int'l Inc.*, 522 F.3d 1279, 1972 (Fed Cir. 2008). In other words, one need not prove that an examiner actually relied on a given misrepresentation for inequitable conduct charges to lie.

of that independent claim expands the invention to cover "selectively depositing said curable adhesive along a peripheral edge . . . so as to exclude water and dirt from said gap . . . ." *Id.* at col. 15 ll. 34–38. Lacks argues that because a dependent claim was necessary in the '213 patent to add the fluid *exclusion* functionality, the independent claim must cover a wheel assembly that permits the flow of fluid through it, under the doctrine of claim differentiation. Proposed Am. Counterclaims ¶ 32.

Claim differentiation is "not a rigid rule but rather is one of several patent claim construction tools." *ICU Medical, Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). Claim construction is a question of law, not fact. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976–79 (Fed. Cir. 1995) (en banc). Permitting an inequitable conduct claim to go forward under these circumstances would punish McKechnie for not recognizing a particular legal argument harmful to its own efforts to obtain the '435 patent. Furthermore, this is not a case like *Ring Plus*, in which a fair reading of the patent would lead to the inescapable conclusion by a person skilled in the art that it disclosed certain ideas, without the need for adroit claim construction tactics. Even under a reading of the complaint favorable to Lacks, McKechnie appears to have done precisely what it was supposed to do as a patent applicant: it disclosed the '213 patent, offered an argument for why it was distinguishable from their invention, and did not put forward a particular legal argument — among many potentially valid legal arguments — that was harmful to its cause. The Court finds that these allegations do not support inequitable conduct charges.

    c.    <u>Application for the '426 Patent</u>

Similarly, the Court finds the allegedly misleading disclosures about the '213 patent in the background of the '426 patent to be innocuous attorney argument, rather than sanctionable misrepresentation of material facts. Lacks argues that "Gzybowski's characterization [in the '426 background] fails to include critical information contained in the '213 Patent, such as the use of separate adhesive beads, sound deadening, and non-sealed adhesive patterns." It also offers a lengthy argument as to why and how the '213 patent invalidates the '426 patent. Proposed Am. Counterclaims ¶ 59. There are no accusations that Lacks said anything about the '213 patent that was untrue, but only that its description of the patent in the background discussed and emphasized certain features of the '213 patent rather than others Lacks deemed to be more relevant after the fact.[7] This Court shares the Federal Circuit's skepticism of inequitable conduct claims that sound more like legitimate advocacy on behalf of a client than an attempt to twist readily-perceivable facts about a patent. Even when reading the complaint in the light most favorable to McKechnie, the Court cannot conclude that a charge of inequitable conduct can rest upon these types of facts.

2. The JR Wheel Assembly

---

[7] *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368 (Fed. Cir. 2000), provides a helpful illustration of this point by showing the types of facts one must prove to turn normal attorney argument into a deceptive practice. In that case, the patent applicant disclosed a partial translation of a Japanese prior art reference that selectively excluded portions of the reference unfavorable to the applicant's cause. *Id.* at 1376. The applicant therefore effectively withheld the reference from the examiner, and the Federal Circuit upheld the corresponding charges of inequitable conduct. *Id.* at 1377. Here, on the other hand, McKechnie *did* disclose the complete underlying patent, and its background argument merely emphasized certain elements of that patent for discussion. The Court fails to see how a discussion of a disclosed patent that admittedly did not shade or misrepresent material facts merits the harsh penalty that a inequitable conduct verdict sanctions.

In addition, Lacks asserts that McKechnie sold the aforementioned JR wheel assembly that allegedly invalidates both the patents in suit before November 7, 2002, the critical date on the '435 patent, rendering both the '435 and the '426 patents void under 35 U.S.C. § 102(b). An on-sale bar requires proof that the product was sold commercially and that it was reduced to practice sufficiently to be ready for patenting. *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 67–68 (1998). Lacks' counterclaims contain a detailed explanation of how they believe the JR wheel assembly anticipates both the patents in suit. *Id.* ¶¶ 45, 69. To establish a public sale, Lacks relies on purchase orders for the JR wheel assembly that McKechnie received prior to the critical date. *Id.* ¶¶ 41, 65. The "reduced to practice" prong is filled by a CAD drawing dated May 22, 2002, that has handwritten annotations purportedly showing an infringing adhesive pattern. *Id.* ¶¶ 43, 65. Finally, Lacks argues that McKechnie and Gzybowski knew or should have known of these sales, and that the failure to disclose them to the PTO should be considered inequitable conduct. *Id.* ¶¶ 44, 48, 66, 68.

McKechnie challenges the probative value of both the CAD drawing and the purchase orders offered by Lacks, and also argues that "the record [does not] contain facts from which it might reasonably be inferred that the glue pattern *ultimately* used on the JR Wheel Assembly was even determined, let alone offered for sale, prior to the critical date." Pl. Resp. at 12. Upon consideration of McKechnie's objections, the Court concludes that none of those objections present a sufficient reason to deny Lacks leave to amend their counterclaim to include the counts.

      a.    <u>The Glue Pattern on the JR Wheel Assembly</u>

McKechnie points to a number of ambiguous statements by Cutcher, who is listed as a co-inventor on both of the patents in suit alongside Hogan, suggesting that the precise glue pattern used on the JR wheel assembly cannot be ascertained. Cutcher Dep. 136, 150–51. These statements do not alter the Court's opinion that Lacks' pleading on this point is sufficient. First, in his deposition, Cutcher explained that only one type of adhesive pattern was ever considered for the JR wheel assembly. *Id.* at 120. McKechnie's characterization of Cutcher's testimony on the redesign of the JR wheel assembly overlooks his statement that while a number of elements of the assembly were being redesigned, he could *not* recall that the adhesive pattern was ever changed. Cutcher Dep. 151 ("Q. . . . [D]o you have a specific recollection of changing the pattern in response to the change in the backbone of the wheel design that caused you to redesign the cover? A. No.").

Second, McKechnie's objection is one of accuracy, rather than specificity, and given the procedural posture of a motion for leave to amend, in which the moving party's accusations are presumably true, such objections are without merit. The Court therefore concludes that Lacks made sufficient allegations of sales of an anticipatory wheel assembly to survive a motion to dismiss.

        b.    Probative Value of Purchase Orders

In their brief, McKechnie directs the Court to *Linear Technologies Corp. v. Micrel, Inc.*, 275 F.3d 1040 (Fed Cir. 2001), as authority for the position that purchase orders cannot trigger the for-sale bar. After review, the Court finds that *Linear Techologies* is more accurately read for the proposition that purchase orders do not *necessarily* trigger the for-sale bar. In that case, an integrated circuit manufacturer received purchase orders for a switching regulator it had not yet offered for sale after a "marketing blitzkrieg" created

intense demand for the product. *Linear Tech.*, 275 F.3d at 1044–45. The defendants sought to invalidate the plaintiff's patent, claiming that the purchase orders triggered the for-sale bar. The Federal Circuit concluded that the purchase orders were not per se evidence of sales, since a contract requires a mutual agreement to make a transaction, and mere submission of purchase orders by customers did not indicate mutual consent. *Id.* at 1054.

There is no evidence here that the case is governed by what appears to be an "exception" to the rule on purchase orders found in *Linear Technologies*. Both the Supreme Court and the Federal Circuit agree that purchase orders can be sufficient evidence of a public sale under the proper circumstances. *See, e.g.*, *Pfaff*, 525 U.S. at 67 (acceptance of purchase order "makes it clear that [an offer of sale] had been made"); *STX, LLC v. Brine, Inc.*, 211 F.3d 588 (Fed. Cir. 2000) (purchase order for still-in-development lacrosse stick head is sufficient evidence of commercial sale under *Pfaff*). Accordingly, it is a fair inference that McKechnie's receipt of purchase orders could not have come without a prior offer for sale capable of triggering the for-sale bar under 35 U.S.C. § 102(b). The Court finds Lacks' allegations of a public sale to be sufficient at this stage of the litigation.

c.  CAD Drawings of JR Wheel Assembly

McKechnie's opposition to the CAD drawing demonstrates undue haste to convert a possible inference into a necessary conclusion. Lacks does not dispute that the May 22 date on the CAD drawing refers to the file's *creation* date, and that a particular printed and marked-up version of the drawing may have been made sometime later. But under the standard of review applicable here, there is a better-than-random possibility that the printing and annotation of the CAD drawing took place sometime between May 22 and November 7 of 2002, as Lacks alleges. Upon completion of discovery, McKechnie may be proven

17

correct on its assertions, but at this stage, the Court finds the accusation that the annotations on the CAD drawing were made prior to the critical date is at least plausible.

F. Has Scienter Been Properly Alleged?

McKechnie's final objection to the proposed inequitable conduct counterclaims is that Lacks has not alleged sufficient facts to support the notion that Cutcher, Hogan, and Gzybowski had the proper state of mind in making the alleged misrepresentations to the PTO. The Court disagrees. Lacks has generally averred the state of mind of the parties in its complaint. *See* Proposed Am. Counterclaims ¶¶ 37, 48, 62, 72. The pleadings allege, based on deposition testimony, that Cutcher and Hogan conceived of the '435 and '426 patents as ways of designing around the '213 patent. Cutcher Dep. 85–86; Hogan 37–38. Lacks also alleges that Cutcher, Hogan, and Gzybowski were aware that McKechnie was taking purchase orders for the JR Wheel assembly. Proposed Am. Counterclaims ¶¶ 44, 68. Lacks has met its burden under *Exergen* of averring state of mind generally, while providing sufficient underlying facts to support its general accusations.[8] *Exergen*, 575 F.3d at 1327.

II. Will Permitting the Counterclaims Create Delay or Prejudice?

The Court has little difficulty concluding that the proposed amended counterclaims offered by Lacks will not create undue delay or prejudice against McKechnie. Lacks submitted evidence with its motion documenting that McKechnie was aware of the possibility of inequitable conduct charges for months, and that Lacks attempted to schedule depositions with Cutcher, Hogan, and Gzybowski well before the close of discovery, to no

---

[8] Additionally, Lacks points out that allegations of scienter could not be more specific because of Gzybowski's resistance to being deposed. The Court agrees it would seem unfair to draw more aggressive conclusions about allegations of scienter until Gzybowski is in fact deposed.

avail. *See* Def. Mot. at 5–6. Thus, much of the specific information needed to plead inequitable conduct under *Exergen* was not available to Lacks until the end of the discovery period. Regardless of which party was responsible for delay, the *Exergen* test all but requires the party seeking to press inequitable conduct charges to engage in fairly extensive discovery prior to pleading it in order to meet the particularity demands. *See Braun Corp. v. Vantage Mobility Intern., LLC*, No. 06-CV-50, 2010 WL 403749, at *2 (N.D. Ind. Jan. 27, 2010) (accepting argument from party seeking leave to amend that it could not satisfy the *Exergen* standard until it conducted discovery it was unable to conduct until the end of the discovery period). Finally, the need for additional discovery and motion practice if Lacks' amended counterclaims go forward is not sufficient "prejudice" to merit denial of leave to amend, despite McKechnie's unsupported arguments to the contrary. The Court finds that this case is not an exception to the general rule that leave should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Lacks' motion to add counterclaims (docket no. 49) is **GRANTED IN PART** and **DENIED IN PART**. Only those claims relating to the non-disclosure of possible sales of the JR wheel assembly prior to the critical date may be added as a counterclaim. Furthermore, based on the analysis stated above, it is additionally **ORDERED** that Gzybowski's motion for a protective order (docket no. 33) is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 9, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 9, 2010, by electronic and/or ordinary mail.

                                        Alissa Greer
                                        Case Manager